UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANE DOE, : | |
|     Plaintiff : | CIVIL ACTION NO. |
| : | |
| vs. : | |
| : | |
| : | |
| NORWICH FREE ACADEMY, : | |
|     Defendant : | July 26, 2010 |

**COMPLAINT**

This is an action seeking damages against Norwich Free Academy by Jane Doe for violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000 et seq. (hereinafter "Title VII")(gender discrimination); Title I of the Americans with Disabilities Act, 42 U.S.C. §§12101 et seq. (hereinafter "ADA")(disability discrimination); and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §46a-60 et seq.(hereinafter "CFEPA") (disability and gender/sexual orientation discrimination); Conn. Gen. Stat. §31-51q; and wrongful termination in violation of public policy.

**JURISDICTION**

1. Jurisdiction of this court is invoked under the provisions of 28 U.S.C. §1331, 42 U.S.C. §2000e-5(f)(3), and 42 U.S.C. §12101(a). The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C.

§1367.

2. Plaintiff has exhausted her administrative remedies. She filed a timely complaint with both the Connecticut Commission on Human Rights and Opportunities (CHRO) and the Equal Employment Opportunities Commission (EEOC) on December 21, 2009. Plaintiff has received a release and right to sue from those agencies.

**PARTIES**

3. During all times relevant to this complaint, Ms. Doe worked and resided in the State of Connecticut and was an employee as that term is defined under 42 U.S.C. §2000e(f), 42 U.S.C. §12101 et seq. and Conn. Gen. Stat. §46a-51.

4. During all times relevant to this complaint, Defendant Norwich Free Academy (hereinafter "NFA") was and still is incorporated under the laws of the State of Connecticut and duly authorized to conduct business in the State of Connecticut, with a principal place of business in Norwich, Connecticut. NFA is a privately endowed, independent, comprehensive high school. NFA employs more than 15 people and is an employer as defined in Title VII, the ADA and CFEPA.

**FACTS**

5. Plaintiff is a female and was employed by the Defendant as a Campus Safety Officer from September 19, 1997 through July 7, 2009.  Plaintiff is a qualified individual with a disability as that term is defined under 42 U.S.C. §12101(a) and within the meaning of 29 U.S.C. §706(8).

6. In 2006, plaintiff was diagnosed with Hashimoto's Hypothyroidism, an autoimmune disorder.  Plaintiff took medication for this disorder, and had blood work done regularly to monitor her condition in order to adjust medication if necessary.  Al Fecteau, Director of Campus Safety, was aware that plaintiff had a thyroid condition, and that she was in counseling.

7. On June 15, 2009, Plaintiff was frustrated by a situation involving her nephew, a student at the school, who was suspected of committing an alcohol violation at a class of 2009 post prom party, and was being barred from graduation ceremonies.  Mr. Iovino, Director of Student Affairs, was the individual who reported plaintiff's nephew.

8. On June 15, 2009, plaintiff had a conversation with Mr. Fecteau about the discipline being imposed on her nephew.  A colleague of plaintiff's brought up the subject despite plaintiff's request that she not do so.  Fecteau said he knew nothing about it, as there had been no Campus

       Safety investigation regarding the incident. Plaintiff stated that she was frustrated by the hypocrisy of Iovino and Campbell, House Administrator, in terms of inconsistency in enforcement of school policies. For some students, for example, baseball players, the Administration would look the other way when a violation of rules occurred. Plaintiff stated that she wondered why nothing that goes on at the school ever gets in the papers. For example, a teacher molesting a student, and handguns being brought on campus, two incidents of which she was aware, but was told to keep secret.

9. On June 16, 2009, while at work, plaintiff experienced an anxiety attack. Ms. Doe was uncomfortable because she had never experienced such a thing before. She was having heart palpitations and felt as if she might begin to cry. Because she did not recognize or understand why she was feeling this way, she went immediately to the nurse's office so no one would see her cry, so she could be alone, and because she was unable to work in that condition.

10. While in the nurse's office, she was visited by Kevin Rodino, her Supervisor and the Assistant Director of Campus Safety. According to his statement to his Supervisor, Al Fecteau, Rodino asked the nurse to

leave so he could be alone with plaintiff, even though he was aware that the nurse was providing Ms. Doe with "medical and emotional support." He later acknowledged that plaintiff was "extremely emotionally unstable", leaning forward "with her head down between her folded arms, on the top of the desk in front of her while sobbing uncontrollably." He further stated that he understood plaintiff was "in crisis regarding this situation and possibly in need of employee assistance." In Rodino's summary of the matter, he further stated that as plaintiff's supervisor, he is "acutely aware" of her "passive aggressive behavior".

11. While in the nurse's office, plaintiff repeated her frustration with Iovino and Campbell, the lack of consistency in enforcing policy and doling out punishment against students, and repeated her statement regarding the lack of news coverage of what goes on at the school.

12. Mr. Rodino then summoned Lucinda Finger, Director of Finance & Human Resources, to the nurse's office, allegedly for the purpose of offering plaintiff help under the employee assistance program. At no time, was a social worker or counselor called, according to policy. While alone with Ms. Finger, and in response to Ms. Finger asking what was going on, plaintiff made a statement to the effect that she "felt like (she)

5

wanted to kick John Iovino in the balls."

13. Because plaintiff was unable to return to work, she requested and was granted sick leave for the remainder of the week, through the last day of school. She was told that she did not need a doctor's note, and that she had the sick leave available. After seeing her therapist that week, and reviewing blood work that had been done the day before the incident due to a change in her medication, it became clear that she had probably experienced a "thyroid storm", due to her thyroid condition. According to her therapist, the stress of the situation with her nephew could have triggered the anxiety attack given her condition as evidenced by the blood work done on June 15, 2009.

14. Plaintiff was called into a meeting on July 7, 2009 and told that she was being terminated. Fecteau stated that he had investigated her having made the comment about Iovino and come to the conclusion that she had violated the zero tolerance policy against threats of violence in the workplace. Plaintiff had made this statement in the nurse's office while being treated for a medical problem.

15. In the letter given to plaintiff at the termination meeting, the reason given for her termination was her "behavior following the decision by NFA

6

to prohibit your family member from participating in graduation ceremonies." Mr. Fecteau never interviewed plaintiff as part of his alleged investigation. When plaintiff attempted to explain her thyroid condition at the termination meeting, he cut her off. In addition, Fecteau accused plaintiff of "breaching confidentiality" and "threatening to go to the newspapers", which plaintiff denied.

16. In a memorandum addressed "to whom it may concern" prepared by Al Fecteau dated June 18, 2009, he states "I have observed that condition before" referring to her being "highly agitated several times in the past."

17. In the twelve years that plaintiff was employed by the Respondent, she had no disciplinary issues and was a good employee. In particular, she had never threatened anyone physically or verbally. Other employees who have engaged in similar and more serious conduct have not been terminated.

18. Plaintiff is a female homosexual and Mr. Fecteau was aware of plaintiff's sexual orientation.

**FIRST COUNT** (Conn. Gen. Stat. §46a-60 et seq., gender and sexual orientation discrimination)

19. Paragraphs 1-18 are hereby incorporated as if fully set forth herein.

20. The acts and practices of the defendants described above constitute unlawful discriminatory employment practices within the meaning of CFEPA based on plaintiff's gender, sexual orientation, and/or failure to conform to a female stereotype. Similarly situated males were treated differently than plaintiff.

21. The acts of defendants as described above were done maliciously or with reckless indifference to the rights of the plaintiff.

22. As a result of defendant's conduct, plaintiff has suffered and continues to suffer damages, including lost wages and benefits, and emotional distress.

**SECOND COUNT** (Conn. Gen. Stat. §46a-60 et seq., disability discrimination)

23. Paragraphs 1-18 are hereby incorporated as if fully set forth herein.

24. The acts and practices of defendants described above constitute unlawful discriminatory employment practices within the meaning of CFEPA, based on plaintiff's disability or perceived disability.

25. The acts of defendants as described above were done maliciously or with reckless indifference to the rights of the plaintiff.

26. As a result of defendant's conduct, plaintiff has suffered and continues to

suffer damages, including lost wages and benefits, and emotional distress.

**THIRD COUNT** (Title VII, gender discrimination)

27. Paragraphs 1-18 are hereby incorporated as if fully set forth herein.

28. By the above acts, the defendant employer subjected plaintiff to unlawful discrimination based on her gender or failure to conform to a female stereotype in violation of 42 U.S.C. §2000e-2(a).  Similarly situated males were treated differently than plaintiff.

29. The acts of defendant as described above were done maliciously or with reckless indifference to the federally protected rights of the plaintiff.

30. As a result of defendant's conduct, plaintiff has suffered and continues to suffer damages, including lost wages and benefits, and emotional distress.

**FOURTH COUNT** (ADA, disability discrimination)

31. Paragraphs 1-18 are hereby incorporated as if fully set forth herein.

32. By the above acts, the defendant employer subjected plaintiff to unlawful discrimination based on disability or because the defendant regarded her as disabled in violation of 42 U.S.C. §12101 et seq.

33. The acts of defendant as described above were done maliciously or with

reckless indifference to the federally protected rights of the plaintiff.

34. As a result of defendant's conduct, plaintiff has suffered and continues to suffer damages, including lost wages and benefits, and emotional distress.

**FIFTH COUNT** (violation of Conn. Gen. Stat. 31-51q)

35. Paragraphs 1-18 are incorporated by reference as if fully set forth herein.

36. Plaintiff's statements to Fecteau, and to others in the nurse's office regarding inconsistency in enforcement of school policy and the lack of news coverage regarding what goes on at the school, including teachers having sex with students and handguns brought on campus, were constitutionally protected and were a matter of public concern.

37. There was a causal connection between plaintiff's constitutionally protected speech and the termination of plaintiff's employment.

38. The exercise of her first amendment rights did not substantially or materially interfere with a bona fide job performance or with her working relationship with her employer.

39. Defendants violated Conn. Gen. Stat. 31-51q when they engaged in said conduct, which was malicious, intentional, willful, wanton, and/or in reckless disregard of plaintiff's rights.

10

40. As a result of defendants' conduct, plaintiff suffered damages, including lost wages and benefits, and emotional distress.

**FIFTH COUNT** (Wrongful termination in violation of public policy)

41. Paragraphs 1-18 are incorporated by reference as if fully set forth herein.

42. Disclosures made by plaintiff while in the nurse's office seeking medical treatment were protected as confidential under the Healthcare Portability and Accountability Act of 1996. (HIPAA).

43. Defendant wrongfully terminated plaintiff's employment based on statements she made while in a confidential medical setting.

44. Defendant's conduct in terminating plaintiff's employment violated the public policy established under HIPAA which seeks to maintain the confidential nature of an individual's medical information.

45. Defendant's conduct was malicious, intentional, willful, wanton, and/or in reckless disregard of plaintiff's rights.

46. As a result of defendants' conduct, plaintiff suffered damages, including lost wages and benefits, and emotional distress.

**WHEREFORE**, the plaintiff claims damages within the jurisdiction of this court to award.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

PLAINTIFF, JANE DOE

By:___/s/_____
Barbara E. Gardner, CT07623
843 Main Street, Suite 1-4
Manchester, CT 06040
Tel. (860) 643-5543
Fax. (860) 645-9554
Bg@bgardnerlaw.com